## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

FI REAL ESTATE FUND TWO LP,

     Plaintiff,

     vs.

LAKE CECILE RESORT INC., MARY T. NGUYEN,

     Defendants.

Case No.

## COMPLAINT

Plaintiff, FI REAL ESTATE FUND TWO LP ("Plaintiff"), brings this action against defendants, LAKE CECILE RESORT INC. ("Lake Cecile") and MARY T. NGUYEN ("MS. NGUYEN") (collectively, the "Defendants"), and alleges as follows:

## PARTIES

1.    Plaintiff is a Delaware limited partnership with a principal place of business in Hopkinton, Massachusetts.

2.    LAKE CECILE is a dissolved Florida profit corporation with a principal place of business at 8010 Firenze Blvd., Orlando, Florida 32836.   This claim may proceed against LAKE CECILE pursuant to Fla. Stat. § 607.1408.

1

3.     Upon information and belief, MS. NGUYEN is a citizen of Florida residing in Orlando, Florida.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) as complete diversity among the parties exists and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.     This Court has personal jurisdiction over LAKE CECILE and MS. NGUYEN because they have sufficient minimum contacts with Florida to provide this Court with jurisdiction, including by operating, conducting, engaging in, and carrying on a general course of business activity in Florida for pecuniary benefit and having an office in Florida by: (i) being incorporated and having its principal place of business in Florida; (ii) being registered with the State of Florida Division of Corporations to do business in Florida; (iii) maintaining an office in Florida; (iv) owning the subject real property in Florida; (v) serving customers and clients in Florida; and (vi) generating significant revenue from Florida customers and clients.  This Court also has personal jurisdiction over LAKE CECILE and MS. NGUYEN because LAKE CECILE breached its contract with Plaintiff in Florida by failing to perform acts required by the contract to be performed in Florida.  This

Court also has personal jurisdiction over MS. NGUYEN because she is a citizen of Florida residing in Florida.

6.     Through such conduct, LAKE CECILE and MS. NGUYEN purposefully availed themselves of the privileges of conducting business in Florida, and when engaging in such conduct, should reasonably have perceived that they would be subjected to this Court's jurisdiction. Accordingly, this Court has personal jurisdiction over LAKE CECILE and MS. NGUYEN under the Florida long-arm statute, Fla. Stat. § 48.193(1)(a)(1), (a)(7), and the Due Process Clause.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because LAKE CECILE regularly transacts business in this judicial district and LAKE CECILE and MS. NGUYEN are subject to personal jurisdiction in this judicial district.

8.     Venue is also proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, Plaintiff suffered harm in this judicial district, and a substantial part of property that is the subject of the action is situated in this judicial district.

## FACTUAL BACKGROUND

9.      LAKE CECILE is the record owner of certain commercial real property located at 4636 West Irlo Bronson Memorial Highway, Kissimmee, Florida 34746 and known as the Sevilla Plaza ("Property").

10.     According to the Florida Division of Corporations, LAKE CECILE was administratively dissolved on September 23, 2022 for failure to file its annual report.

11.     At all material times, MS. NGUYEN was a shareholder and the President of LAKE CECILE and purported to act for LAKE CECILE and was a direct participant in the acts and omissions alleged herein, including after LAKE CECILE was dissolved.  Accordingly, MS. NGUYEN may be held personally liable for the debts, obligations and liabilities incurred by LAKE CECILE because she knowingly acted on behalf of LAKE CECILE after it was dissolved.

12.     In November 2022, Plaintiff learned of a potential opportunity to purchase the Property.

13.     Beginning in November 2022, Plaintiff and LAKE CECILE, by and through their real estate agents, discussed and negotiated a framework agreement for the purchase and sale of the Property, through oral and written communications and drafts of a term sheet which were exchanged between them and their agents.

14.     The parties undertook negotiations for Plaintiff to purchase the Property owned by LAKE CECILE.

15.     Plaintiff and LAKE CECILE reached agreement on the major terms of a purchase and sale agreement for the Property and memorialized their agreement in a detailed letter of intent fully executed on November 15, 2022 ("LOI").  (A true and correct copy of the LOI is attached as Exhibit 1.)

16.     LAKE CECILE's President, MS. NGUYEN, signed the LOI for LAKE CECILE on November 15, 2022.  LAKE CECILE's agent then emailed the signed LOI to Plaintiffs' agent, which Plaintiff had previously signed on November 11, 2022.

17.     The LOI identifies the Buyer as "FI Real Estate Fund II", the Seller as "Seller of Record" and sets the purchase price at $5,250,000.

18.     The LOI sets forth the major sales terms regarding *inter alia* the specific property, purchase price, deposit, title and escrow, due diligence, closing, financing, 1031 exchange and duties of both parties providing consideration for the agreement.

19.     In the LOI, the parties acknowledged that the LOI addresses certain major terms of the contemplated transaction, but not all material terms, and that those other material terms would be subject to further negotiation.  The parties

unequivocally agreed to negotiate the open terms and execute a purchase and sale agreement within seven days.

20.    Specifically, the LOI contains the following two paragraphs:

> This Letter of Intent is non-binding and is intended to serve as the expression of the major terms and conditions that <u>shall be incorporated into a final Purchase and Sale Agreement</u>.  Neither Buyer nor Seller shall be bound to each other under this letter as <u>other material terms and conditions will be subject to further negotiation</u>.

> <u>Upon execution of this Letter of Intent Buyer and Seller shall negotiate and execute a Purchase and Sale Agreement within **seven (7)** calendar days</u>.    Buyer requests that Seller respond to this Letter of Intent by **11/14/2022 at 5:00pm** EST with Seller's response to these major terms and conditions.

(Underlined emphasis added; bold emphasis in original).

21.    The LOI constitutes a valid and enforceable contract between LAKE CECILE and Plaintiff.  All of the elements necessary to form an enforceable contract are present with respect to the LOI, i.e., offer, acceptance, and consideration.  Both parties manifested an intention to be bound by the terms of the LOI and the terms are sufficiently definite to be specifically enforced.

22.    The LOI, coupled with the surrounding circumstances, constitutes a binding agreement between the parties to incorporate the agreed-upon terms contained in the LOI into the final purchase and sale agreement and to negotiate

open terms in good faith and execute a purchase and sale agreement withing seven days.

23.    On November 16, 2022, Plaintiff, through its agent, emailed LAKE CECILE's agent a purchase and sale agreement consistent with terms contained in the LOI ("P&S Agreement").  (A true and correct copy of the P&S Agreement is attached as Exhibit 2.)

24.    On November 18, 2022, LAKE CECILE's agent emailed Plaintiff's agent and stated that MS. NGUYEN was in the process of reviewing the P&S Agreement.

25.    On the afternoon of November 21, 2022, having received no response from LAKE CECILE regarding the P&S Agreement, Plaintiff's agent emailed LAKE CECILE's agent asking for an update on the status of MS. NGUYEN'S review of the P&S Agreement.

26.    On the evening of November 21, 2022, LAKE CECILE's real estate agent informed Plaintiff's agent that LAKE CECILE and its agent were continuing to solicit offers to purchase the Property from other potentially interested parties and that LAKE CECILE's agent was presenting competing offers to MS. NGUYEN despite LAKE CECILE's express promise in the LOI that it would negotiate and execute a purchase and sale agreement withing seven days.  Upon information

and belief, LAKE CECILE and its agent used the LOI's purchase price to solicit higher offers from third parties.

27.     LAKE CECILE's agent also informed Plaintiff's agent that LAKE CECILE and MS. NGUYEN were unilaterally repudiating and terminating the LOI and the deal terms stated therein, including the agreed-upon purchase price, and that LAKE CECILE would now only sell to Plaintiff for a higher price of $5,500,000 despite having already agreed to the $5,250,000 purchase price in the LOI.

28.     Later that evening, Plaintiff's counsel emailed LAKE CECILE's agent, conveying Plaintiff's position that LAKE CECILE's unilateral repudiation and termination constitutes a breach of the LOI and bad faith.

29.     As communicated to LAKE CECILE's agent on November 21, 2022, the LOI sets forth numerous agreed upon material terms, including purchase price.  The LOI expressly requires that the parties shall negotiate and execute a purchase and sale agreement within seven days.  The LOI reflects the parties' agreement on the major contractual terms—including the purchase price—and is therefore binding as to the agreed-upon terms notwithstanding that other terms were left open and subject to further negotiation.

30.     Under the LOI, the parties have an obligation to negotiate the purchase and sale agreement in good faith, and the failure to negotiate in good faith towards a contract as contemplated in the LOI is a breach of the LOI.

Refusing to negotiate the purchase and sale agreement with Plaintiff on the already agreed upon terms and instead soliciting post-LOI offers to try and leverage a higher purchase price from Plaintiff and/or third parties is not good faith.

31.     Additionally, the LOI contemplates that the parties will not deal with anyone else while they negotiate the P&S Agreement during the seven-day window.  This too is an enforceable obligation and LAKE CECILE's failure to deal exclusively with Plaintiff is also a breach of the LOI.

32.     As communicated to LAKE CECILE, its decision to back out of the deal without ever negotiating, its act of shopping the Property to other parties, and its refusal to honor and perform under the LOI because LAKE CECILE was unhappy with the already agreed-upon purchase price constitutes bad faith and a breach of the LOI.

33.     As communicated, while the LOI may not bind the parties to the ultimate contractual goal, the LOI does bind them to negotiate the open terms in good faith.  Indeed, the LOI provides that any *other* material terms will be subject to further negotiation and that upon execution of the LOI the parties *shall* negotiate and execute a purchase and sale agreement within seven days.  Again, this language evidences the parties' unequivocal promise to negotiate in good faith with a view toward executing a formal purchase and sale agreement.

34.    Thus, under the LOI, the parties could abandon the transaction if a definitive purchase and sale agreement is not executed, on condition that they have made a good-faith effort to reach a final agreement and not insisted on conditions that do not conform to the agreed-upon terms in the LOI.

35.    LAKE CECILE breached its obligation to negotiate in good faith when it reneged on the agreed-upon purchase price and the LOI, unilaterally terminated the LOI without ever engaging in negotiations, and refused to execute a purchase and sale agreement and otherwise perform under the LOI.

36.    LAKE CECILE's actions constitute a breach of valid and enforceable terms of the LOI.

37.    As a result of LAKE CECILE's improper termination and abandonment of the LOI and bad faith conduct toward Plaintiff, Plaintiff has suffered a loss of its expectancy interest in the P&S Agreement and value and profits to be earned in the future through the purchase and sale transaction.

38.    LAKE CECILE's acts and omissions described above were undertaken maliciously and in bad faith with the intention of benefiting Lake Cecile at the expense of Plaintiff without informing Plaintiff.

39.    At all relevant times, Plaintiff was ready, willing and able to perform on the LOI and P&S Agreement and close on the purchase and sale of the Property.

## COUNT I
## Specific Performance

40.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

41.     Plaintiff proffered to LAKE CECILE a definitive P&S Agreement in accordance with the LOI.

42.     LAKE CECILE has wrongfully failed and refused to honor the LOI and negotiate and execute that P&S Agreement or any other definitive purchase and sale agreement in accordance with the terms set forth in the LOI.

43.     Plaintiff has fully performed all of its obligations and/or its performance is excused by LAKE CECILE's material breaches of the parties' agreement.

44.     Plaintiff has no adequate remedy at law.

45.     By reason of the foregoing, Plaintiff is entitled to an order directing LAKE CECILE to honor the LOI and negotiate and execute the P&S Agreement, or such other purchase and sale agreement in accordance with the terms of the LOI as the Court shall direct.

## COUNT II
## Declaratory Relief

46.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

47.     An actual controversy presently exists between the parties with respect to LAKE CECILE's obligations to Plaintiff under the LOI, the P&S Agreement, and the parties' dealings.

48.     Under the Florida Declaratory Judgment Act, Fla. Stat. §§ 86.011 – 86.15, and the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, Plaintiff seeks a declaration that Lake Cecile is obliged to honor the LOI and negotiate and execute and the P&S Agreement, or such other purchase and sale agreement in accordance with the terms of the LOI as the Court shall direct, and that Lake Cecile is precluded from negotiating and/or entering into a purchase and sale agreement for the sale of the Property with any third-party or otherwise soliciting or entertaining offers to purchase the Property from any third-party.

49.     Plaintiff seeks a judicial declaration of the parties' rights and responsibilities.

## COUNT III
### Breach of Contract

50.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

51.     As set forth above, having agreed upon and manifested their mutual assent to the material terms of the LOI, Lake Cecile and Plaintiff intended to enter into, and did enter into, a valid and legally enforceable contract with the LOI.

52.     By its conduct, LAKE CECILE has breached and repudiated the LOI and Plaintiff has been damaged as a result.

53.     By reason of the foregoing, LAKE CECILE is liable to Plaintiff for damages for breach of contract, in an amount to be proven at trial.

54.     As set forth herein, MS. NGUYEN is personally liable to Plaintiff for the debts, obligations and liabilities of LAKE CECILE.


<u>COUNT IV</u>
**Breach of Duty to Negotiate in Good Faith**

55.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

56.     Under the express and implied terms of the LOI, LAKE CECILE had an obligation to negotiate in good faith and deal with Plaintiff fairly and to not shop the Property during the negotiation period.

57.     LAKE CECILE breached its express and implied duty of good faith and fair dealing by repudiating the LOI and by failing and refusing to negotiate and execute the P&S Agreement, or such other purchase and sale agreement in accordance with the terms of the LOI, and by continuing to shop the Property after signing the LOI.

58.     LAKE CECILE is liable to Plaintiff for damages resulting from such breaches in an amount to be proven at trial.

59.     As set forth herein, MS. NGUYEN is personally liable to Plaintiff for the debts, obligations and liabilities of LAKE CECILE.

## COUNT V
**Unjust Enrichment**

60.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

61.     As set forth above, Plaintiff alleges that it entered into a valid and enforceable contract with LAKE CECILE with respect to the LOI.

62.     Alternatively, if it is determined that Plaintiff and LAKE CECILE did not enter into a valid and enforceable contract with respect to the LOI, then LAKE CECILE has caused Plaintiff to confer benefits on LAKE CECILE and it would be inequitable for LAKE CECILE to retain the benefits without payment of value.

63.     As set forth above, by unilaterally and unjustifiably terminating, abandoning, and failing to honor the LOI, LAKE CECILE has caused Plaintiff to confer benefits on LAKE CECILE through the increased expectancy revenue, profits, business value and equity value in the Property that rightfully belong to Plaintiff, but which LAKE CECILE has wrongfully retained by virtue of its conduct.

64.     LAKE CECILE knowingly and wrongfully obtained, accepted, received and retained, and has used, and will continue to use, to its great economic

benefit, the increased revenue, profits, business value and equity value in the Property that rightfully belong to Plaintiff.

65.     By reason of the foregoing, LAKE CECILE is liable to Plaintiff for damages constituting the value of the benefits bestowed and wrongfully obtained, to prevent unjust enrichment, in an amount to be proven at trial.

66.     As set forth herein, MS. NGUYEN is personally liable to Plaintiff for the debts, obligations and liabilities of LAKE CECILE.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor on each Count and against Defendants and grant the following relief:

A.     On Count I, an order directing LAKE CECILE to negotiate and execute the P&S Agreement, or such other purchase and sale agreement in accordance with the terms set forth in the Letter of Intent as the Court shall direct;

B.     On Count II, pursuant to Fla. Stat. §§ 86.011 – 86.15 and 28 U.S.C. §§ 2201 and 2202, an order declaring that LAKE CECILE is obliged to negotiate and execute the P&S Agreement or such other purchase and sale agreement in accordance with the terms set forth in the LOI as the Court

shall direct, and issuing any injunctions necessary to enforce the declaratory judgment and directing that LAKE CECILE is precluded from negotiating and/or entering into a purchase and sale agreement for the sale of the Property with any third-party or otherwise soliciting or entertaining offers to purchase the Property from any third-party;

C.   On Counts III and IV, in the alternative, award Plaintiff damages for breach of contract and breach of the express and implied covenant and obligation to negotiate in good faith in an amount to be proven at trial;

D.   On Count V, in the alternative, award Plaintiff restitution sufficient to compensate Plaintiff for LAKE CECILE's unjust enrichment in an amount to be proven at trial;

E.   On Count V, in the alternative, order disgorgement of all monies, profits, and gains which LAKE CECILE obtained or will unjustly obtain in the future at the expense of Plaintiff;

F.   Order and declare that MS. NGUYEN is personally liable to Plaintiff for the debts, obligations and liabilities of LAKE CECILE.

G.   Imposition of a constructive trust for the benefit of Plaintiff;

H.   Award Plaintiff prejudgment interest according to proof; and

I.      Award Plaintiff such other and further relief, including equitable relief, as the Court deems just and appropriate, including but not limited to Plaintiff's costs and attorneys' fees.

Dated this 9th day of December, 2022

**CHRISTOPHER R. TURNER, PLLC**
*Attorney for Plaintiff*
2600 E. Robinson St.
Orlando, FL 32803
Telephone: 407-796-2278
Facsimile:  407-630-8737

By:__/s/ Christopher R. Turner
    Florida Bar Number 47150
Service Address: eservice@crtlegal.com

17